**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

BONNIE W. DAVID
MAGISTRATE IN CHANCERY

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Final Report: July 3, 2024
Date Submitted: July 2, 2024

Chad R. Lingenfelder, Esquire
The Smith Firm, LLC
8866 Riverside Drive
Seaford, Delaware 19973

Dean A. Campbell, Esquire
Law Office of Dean A. Campbell, P.A.
703 Chestnut Street
Milton, Delaware 19968

RE: *Coulbourn Farms, LLC v. The Estate of Donald Edward Coulbourn, et al.*,
C.A. No. 2023-0085-BWD

Dear Counsel:

This final report resolves cross-motions for summary judgment pending in the above-referenced action (the "Motions"). For the reasons that follow, the Motions are denied.

By way of background, petitioner Coulbourn Farms, LLC ("Petitioner" or "Coulbourn Farms") is a Delaware limited liability company. Compl. For Decl. J. And Specific Performance [hereinafter, "Compl."] ¶ 1, Dkt. 1. Petitioner has two managing members: Logan Dunn and Robert Coulbourn. Ans. Of The Est. Of Donald Edward Coulbourn, Charles Coulbourn, Larry T. Coulbourn Sr. And Richard Coulbourn And Countercl. [hereinafter, "Countercls."] ¶ 1, Dkt. 7. Robert Coulbourn is the grandson of the late Donald Edward Coulbourn ("Decedent"). *Id.*

Prior to his death in 2022, Decedent owned a twenty-one-and-a-half-acre farm in Seaford, Delaware (the "Farm"). *Id.* ¶ 3.

On October 7, 2021, Petitioner and Decedent entered into an Agricultural Lease Agreement (the "Lease Agreement") under which Petitioner leased the Farm from Decedent for ten years. *Id.*, Ex. A [hereinafter, "Lease Agt."] ¶ 4. The Lease Agreement granted Petitioner a right of first refusal to purchase the Farm:

> For good and valuable consideration, which both parties acknowledge has been conveyed, the Lessor grants the Lessee a Right of First Refusal to purchase the [Farm]. This purchase price will be based on the average of three (3) independent appraisals by licensed appraisers with said costs of the appraisals divided equally between the Lessee and Lessor.

Lease Agt. ¶ 6.

On July 6, 2022, Petitioner and Decedent entered into an Agreement of Purchase and Sale (the "Sale Agreement") under which Petitioner agreed to purchase, and Decedent agreed to sell, the Farm for $240,000.[1] Compl., Ex. A. Petitioner paid a $30,000 deposit at signing. *Id.*, Ex. B. Decedent died one week

---

[1] In their opening brief, Respondents "estimate the value of the Farm to be approximately" $500,000. Op Br. In Supp. Of Mot. For Summ. J. [hereinafter, "ROB"] at 6, Dkt. 15. Their answering brief states that "[t]he Farm has been valued at $375,000.00," "equat[ing] to a discounted sales price in the amount of $135,000.00." Resp't's Ans. Br. to Pet'r's Mot. For Summ. J. [hereinafter, "RAB"] at 2-3, Dkt. 22.

later, on July 14, 2022.  *Id*. ¶ 10.  Petitioner paid a second $30,000 deposit into escrow on August 25, 2022.  *Id*., Ex. D.

After Decedent's passing, Respondents—the Estate of Donald Edward Coulbourn, Charles Coulbourn, Larry T. Coulbourn, Sr., Richard Coulbourn, and Denna Marie Smith—refused to sell the Farm under the terms of the Sale Agreement.  They assert, among other things, that the Sale Agreement is invalid and unenforceable because it is not supported by consideration, it was the product of a breach of fiduciary duty, and Decedent lacked capacity or was unduly influenced to enter into it.[2]  Countercls. at 7.  On January 26, 2023, Petitioner initiated this action through the filing of a Complaint for Declaratory Judgment and Specific Performance (the "Complaint"), seeking a declaration that the Sale Agreement is valid and binding and an order requiring Respondents to specifically perform their obligation to sell the Farm thereunder.  Compl. ¶¶ 18-20.

---

[2] Petitioner, on the other hand, contends that the Sale Agreement "was agreed to by the Decedent and the Petitioner based upon the Decedent's own initiation due to the Respondents' continual harassment of their father to sell the [Farm], a family farm, to a third party intentionally breaking the [Lease Agreement] and taking the [Farm] out of the family in contrast to the Decedent's wishes."  Pet'r's Ans. Br. To Resp'ts' Mot. For Partial Summ. J. On Pet'r's Compl. For Specific Performance at 10, Dkt. 17.

The parties have cross-moved for summary judgment under Court of Chancery Rule 56.[3] Summary judgment will be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Ct. Ch. R. 56(c). "When the Court is faced with cross-motions for summary judgment the same standard must be applied to each of the parties' motions and the mere existence of cross-motions does not necessarily indicate that summary judgment is appropriate for one of the parties." *Baring v. Condrell*, 2004 WL 2340047, at *3 (Del. Ch. Oct. 18, 2004). "Thus when presented with cross-motions for summary judgment a movant will be granted relief only if the Court determines that the record does not require a more thorough development to clarify the law or its application to the case." *Id*.

Respondents seek summary judgment that "the Sale[] Agreement lacks valid and binding consideration and is unenforceable" as a matter of law. ROB at 11. To

---

[3] On June 27, 2023, Respondents filed their Opening Brief in Support of Motion for Summary Judgment on Plaintiff's Complaint. Dkt. 15. On July 28, 2023, Petitioner filed its Answering Brief to Respondents' Motion for Partial Summary Judgment on Petitioner's Complaint for Specific Performance. Dkt. 17. The same day, Petitioner filed its Opening Brief in Support of Motion for Summary Judgment on Petitioner's Complaint for Specific Performance. Pet'r's Op. Br. In Supp. Of Mot. For Summ. J. On Pet'r's Compl. For Specific Performance [hereinafter, "POB"], Dkt. 18. On December 1, 2023, Respondents filed their Answering Brief to Petitioner's Motion for Summary Judgment and Reply Brief in Support of their Motion for Summary Judgment. Dkt. 22; Resp't's Reply Br. In Supp. Of Their Mot. For Summ. J., Dkt. 26. The Court heard oral argument on July 2, 2024. Dkt. 29.

make this argument, Respondents point to the right of first refusal in Paragraph 6 of the Lease Agreement. According to Respondents, under that provision, "Coulbourn Farms LLC was to pay Decedent some amount to be determined, and in exchange, Decedent was to convey the Farm." *Id*. at 9. Per Respondents, because the parties each had a "pre-existing duty" to buy or sell the Farm under the Lease Agreement, the subsequent Sale Agreement lacked consideration. *See id*. at 10 ("A party cannot rely on a pre-existing duty as his legal detriment in an attempt to formulate a contract." (quoting *Cont'l Ins. Co. v. Rutledge & Co., Inc*., 750 A.2d 1219, 1232 (Del. Ch. 2000)).

Respondents' argument misses the mark because it misconstrues the nature of a right of first refusal. "A right of first refusal . . . is a right that a prospective buyer shall be given an option to purchase property before the owner makes a contract to sell the property to another." *Kaplan v. Beach Dev. Corp*., 1988 WL 55324, at *4 (Del. Super. May 23, 1988). "[A] right of first refusal has no binding effect unless the offeror decides to sell." 25 Richard A. Lord, *Williston on Contracts* § 67:89 (4th ed.), Westlaw (database updated May 2024); *see also Kaplan*, 1988 WL 55324, at *4 ("[A] privilege of first refusal or preemption does not give the preemptioner the power to compel the owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the preemption, at

the stipulated price, and the preemptioner may then elect whether he will buy."). The Lease Agreement did not obligate Petitioner to purchase the Farm, nor did it obligate Decedent to sell the Farm to Petitioner unless he intended to sell it to another buyer. Respondents' pre-existing duty argument is, therefore, meritless. To the extent Respondents seek summary judgment that the Sale Agreement is unenforceable as a matter of law due to lack of consideration, their motion is denied.

Separately, Petitioner seeks summary judgment that the Sale Agreement is valid and enforceable. POB at 12. Petitioner argues that "[a] review of the plain appearance of the contract unequivocally displays the parties' intent to bind one another contractually to the sale of the Property." *See id*. at 12-13. But the Counterclaims allege that Decedent lacked capacity and the Sale Agreement was the product of undue influence. Countercls. ¶¶ 5-6. A contract entered into without capacity or as a result of undue influence may be declared invalid and unenforceable. *See, e.g.*, *Clark v. Ryan*, 1992 WL 163443, at *5 (Del. Ch. June 17, 1992) ("[A] . . . contractual agreement . . . may be invalidated under certain conditions including . . . undue influence . . . ."); *Ryan v. Weiner*, 610 A.2d 1377, 1380 (Del. Ch. Mar. 13, 1992) ("[A] lack of legal capacity . . . can lead a court to declare a promise unenforceable or a transfer voidable."). The Counterclaims raise issues of material

fact that preclude entry of summary judgment on the validity of the Sale Agreement.[4]

*See, e.g.*, *Est. of Rash*, 1983 WL 103255, at *4 (Del. Ch. Dec. 19, 1983) (denying summary judgment where "some credible evidence . . . raise[d] a genuine issue of fact as to . . . capacity," "necess[itating] . . . the full presentation of all evidence at trial"); *In re Est. of Arco*, 1977 WL 9539, at *3 (Del. Ch. Oct. 12, 1977) ("I am satisfied that there is a genuine issue of fact as to whether or not undue influence was actually exerted . . . .").[5]

To summarize, both Motions are denied. This letter is a final report under Court of Chancery Rule 144. Exceptions are stayed pending a final resolution after

---

[4] Respondents also contend that the Sale Agreement was the product of a breach of fiduciary duty. RAB at 6-9. The nature of Robert Coulbourn's relationship with Decedent presents additional fact questions that cannot be resolved on the Motions. *See, e.g.*, *Letgatski v. Bethany Forest Assoc., Inc.,* 2006 WL 1229689, at *3-6 (Del. Super. Apr. 28, 2006) (denying summary judgment on a breach of fiduciary claim where there were material facts in dispute regarding the existence of fiduciary obligations, explaining that "the facts and circumstances are the determining factors in a finding of a fiduciary duty" and "it is premature to dispose of this issue on summary judgment" when "[t]here are clearly material facts in dispute").

[5] Petitioner also seeks summary judgment that an order of specific performance is "necessary and equitable." POB at 14-17. The same fact issues that preclude summary judgment on the validity of the Sale Agreement also preclude summary judgement on Petitioner's request for specific performance.

trial.

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Magistrate in Chancery


cc:    All counsel of record (by File & ServeXpress)